Thank you all for appearing for this afternoon's performance, and we will call the case, number 19-10396, Cochran v. SEC. And we'll hear first from Ms. Little, if you're ready. May it please the Court. I'm Margaret Little. I represent Michelle Cochran. Michelle Cochran asks this Court today to find jurisdiction and enjoin the SEC from subjecting her to a second unconstitutional administrative prosecution. She endured one such proceeding in 2016, and now the SEC's— I'm sorry. When you say find jurisdiction, what's before us are the stay factors. You're just asking for a stay of the agency proceedings. The merits panel will decide whether the district court had jurisdiction or not. Is that correct? Yes, although there is some law in your circuit to indicate that in order to issue a stay, you need to find jurisdiction as well. You want to speak up a little bit, please? Yes, thank you. She endured one such proceeding in 2016, and now the SEC has set a second administrative proceeding into motion before a judge that the government itself has argued enjoys unconstitutional multiple layers of tenure protection. All Americans have a right to demand a lawful court. They should not be subjected to serial, to-be-vacated hearings that impose enormous professional, reputational and financial costs on respondents, and also create costly and prejudicial years-long  They also constitute a profligate waste of public resources. I mean, again, it may just be my focus, but focusing simply on FRAP 8 and the stay factors, are you contending that you win only under the Ruiz factors, or would you also argue that you win and it's appropriate for us to apply the Nikin factors? I think we win under either standard. Which do you think is appropriate here? We have argued that Ruiz is the standard, but I have no concerns at all that we would not be able to show a likelihood of success on the merits, irreparable harm. Does that, I mean, just following that up, it seems to me a little harder for you to prevail under Nikin likelihood of success if in your brief you're also saying to rule that way would be inconsistent with all five circuits that have spoken already. Wouldn't that make it a little bit odd for us to say you have a likelihood of success? I think not, and that's because those circuits are wrong and they are also in contravention of a controlling United States Supreme Court decision that compels a different conclusion. So you're urging us, if we apply Nikin, it would seem to me you'd have a better refuge if we conclude that the Ruiz factors are applicable. That's just my opinion in that we'd have to say five circuits, as you just said, are wrong. Perhaps it's because of intervening authority, and it is a complex and interesting set of questions with Lucia and Freedom Enterprise. Ruiz, we wouldn't have to say you're likely to win. We'd have to say this is a serious question, substantial case, raising a serious question? Correct. And then we do that when the equities favor your client? Yes. Heavily? Yes. So that would get me to Standard Oil. If your client's in the middle of proceedings and the Supreme Court has said in a different context that defending yourself against a prosecution isn't itself a reparable harm, that's part of being in society and the government prosecutes and you'll get your day to be vindicated. How would you distinguish Standard Oil? That goes to the nature of the claim. We are making a claim that Michelle Cochran is being exposed to an unconstitutional proceeding. That is deemed by many authorities, cited on our brief and also in Wright and Miller, to be in and of itself irreparable harm. In Standard Oil, you had a completely different situation where, for one thing, that was an appeal under the APA, and they held that there was a requirement for a final order, as there is in the APA, so it's a statutorily distinguishable case. Furthermore, in Standard Oil, the plaintiffs in that case were asking the court to review the averments of the complaint, which is a really odd thing for them to do, and of course the court ruled that, well, you've got to go through the administrative process. We are not asking this court to get into the merits of the SEC's case against Michelle Cochran at all. We have an entirely discreet separation of powers removal question that is of constitutional magnitude and needs to be decided by— What if your constitutional arguments had been that due process wasn't being met? It was tied into the actual prosecution of you? Would you still be able to get into a district court? That would be a harder case, but we don't have that. So it would require us to accept that distinction. We have to subclassify constitutional claims. No. Some get you into district court, some are—no? I don't think so, because Free Enterprise Fund here provides both the rule of decision on jurisdiction and the merits, and so we have a strong, isolated, single claim on the line drawing. I understand why the court is concerned about that. I'm prepared to speak on that question, but on the record in this case, we don't need to draw a line between one kind of constitutional claim and another because this one is so compelling. Going back to the first of the stay factors, the likelihood of success on the merits, whether under Ruiz or—I would point—I've only called it McKinn, but whatever you want to call the other case. Do you agree that we would need to both say you're likely to succeed on the jurisdictional question under Section 78Y and also that you're likely to succeed on the constitutional question about the removal of the administrative law judges? I think so, yes. Is there any case in the United States that you're aware of that's confronted this question of whether an officer of the United States can be protected by the Merit Systems Protection Board? I'm not aware of it. In fact, the U.S. Supreme Court suggested in Lucia that there was a dearth of case law on that question, and they actually asked for courts below to start to address the issue. They declined to look at the removal question, and they encouraged lower courts to do that, and I think this is an opportunity for this circuit to respond to that call for rulings on that question. But you're not even aware of a district court anywhere in the United States that's ever confronted that question? I'm not. Well, I had a more simple-minded approach to this case, and I was looking at it in terms of free enterprise and Bank of Louisiana. So what do you say about Bank of Louisiana? Bank of Louisiana is readily distinguishable. First of all, it decided a statutory question under a different statute. We are asking this court to follow the Supreme Court's ruling on 78Y and the fact that it does not preclude jurisdiction, whereas the Bank of Louisiana was operating under an FDIC statute, Section 1818, that had a flat jurisdictional bar. Thunder Basin is also a tool of statutory interpretation, and SCOTUS has already interpreted 78Y, and because 1818, which is the section under the FDIC statute, said it was exclusive jurisdiction, that's why the panel came out the way it did. Why do you need to distinguish Thunder Basin? It would seem that you actually can do pretty well, at least under two of its three factors. Well, thank you for phrasing the question in that way, because I think one of the most there's more than three factors. In fact, one of the problems with the SEC ALJ cases is that they ignore two predicate factors and then move on to a third section. Let me explain myself. Thunder Basin says it's actually a two-part inquiry. Is it fairly discernible from the text of the statutory scheme that Congress intended this kind of claim to go to an administrative proceeding? The second is, are these the types of claims that Congress intended to be adjudicated there? To assist a court in making those determinations, then you move on to three more factors, meaningful, judicial review, wholly collateral, outside the expertise, et cetera. To answer Judge Jones's inquiry about Bank of Louisiana, you will search in vain in that three factors. They just move on to the three without examining the text of the statutory scheme that Congress intended to consign to the administrative proceeding. And here's what Free Enterprise Fund says about 78Y. It says, but the text does not expressly limit the jurisdiction that other statutes confer on district courts, nor does it do so implicitly. You can stop there, but it does go on. It says, are these the types of claims that Congress intended to be adjudicated in administrative proceedings? FEF says, these are standard questions of administrative law which the courts are fully capable of answering. Does it provide meaningful judicial review? No. We do not see how petitioners could meaningfully pursue their constitutional claims under the government's theory of 78Y. It adds an important thing that gets neglected in the case law discussion. It says not every board action is encapsulated in a final commission order or rule. Furthermore, on wholly collateral, they say, but petitioners object to the board's existence, not to any of its auditing standards. Petitioner's general challenge is collateral to any commission orders or rules from which review might be sought. And finally, on the agency expertise, and this, again, is a direct quote from Free Enterprise Fund, petitioners' constitutional claims are also outside the commission's competence and expertise. We made those points in Bank of Louisiana. Well, in the Bank of Louisiana case, those last three factors were considered, but not the first two. Your first argument, and I certainly see how you're mapping Free Enterprise on, but your first argument is you aren't even looking at being agreed from a final order. You're attacking the tribunal ab initio. So the 78Y doesn't even speak to that. Is that essentially it? Yes. We're not appealing a final order. We're objecting to the qualifications, constitutional qualifications. What about the government's response that this would sort of bring to a halt all cease and Right. Well, first of all, many ALJs are operating under statutes that are jurisdiction stripping. So this would not affect that. This is a statutory construction case under the SEC statute. Second of all, it would only apply to pending cases before the SEC in which those issues have been preserved. Third of all, there's a lot of concern, and you sense it in the judicial decisions, that well, are we going to have an onslaught of cases or are these proceedings going to be set aside? And there are a couple of responses to the concern about floodgates. But I would point out that when Lucia was decided, about 100 cases were vacated. What I'm perceiving in the SEC ALJ case is there's a lot of concern about, well, are proceedings going to be a problem on the front end? But the SEC's practice of bringing unconstitutional claims in administrative proceedings has a back end cost, and that is repeated, vacated proceedings that also are troubling in terms of Unlike some of these other agencies, they can bring all their enforcement actions in federal district court, can't they? Absolutely. There's a very simple solution to this. Either the commission can try the cases or they can bring their cases in federal court. In fact, the SEC reinstituted this case against Michelle Cochran when it knew it had a removal problem. It had actually briefed that issue to the United States Supreme Court. It was perfectly free to reinstitute that action in a lawful tribunal, and it did not. If we grant the stay, in your mind, when does it get extinguished? When the merits panel makes its ruling on this jurisdictional question? Or when, again, assuming you prevail, it goes back down to Judge McBride and he makes a ruling on the removal clause question? That's a good question. I've been pondering that myself. I expected I might get a question from you as to whether you think this panel or the Fifth Circuit should address the question, and there's a lot of merit to that. If you issue the stay, that would suggest you believe there is some merit to it, and expediting review of this matter is not a bad idea. I was a little confused about this to begin with, but I thought you were seeking an injunction pending appeal in this court. Yes. Yes, we are. But if for some reason you wanted to remand at any point, you're free to do that, but I think that a decision on the merits from this court is probably . . . Is there any practical difference, other than the four-factor test, between what you're asking for under Rule 8 and what would be the merits of the case? That . . . That we want the administrative proceeding stayed? Right. Yeah. No, I don't think there is. I mean, it's . . . I just wanted to think it through. Because there's no factual issues to develop, right? Right. They're questions of law. Precisely. And that goes to . . . It looks like I'm out of time. May I finish the sentence? You can finish your thought. Okay. And that goes to why we think it is a very simple decision for this court to make, because we have the single issue here of constitutional magnitude recently recognized by the U.S. Supreme Court in 2010. Okay.  You have time for rebuttal. Aguilar? Are you old enough to argue? I'm 34, Your Honor. Oh, my goodness. You've been old. The gray hair usually helps out a little bit. I'm getting more of it, and unfortunately, I don't have any control over that part. Well, you'll be lucky when you're 50. I hope so, Your Honor. May it please the Court, Daniel Aguilar for the federal defendants. The Supreme Court in Thunder Basin and Elgin, and this court in Bank of Louisiana, explain that the Thunder Basin factors can apply to divest district courts of jurisdiction and channel particular statutory and constitutional claims to the courts of appeal. This court in Bank of Louisiana accepted the reasoning and conclusion of every other court of appeals that has considered precisely these kind of separation of powers cases. Of the five, how many were post-Freedom Enterprise? All of them have been since Freedom Enterprise. Freedom Enterprise was decided, I believe, in 2000. Right. Okay. So it's once they hadn't considered them as Article II inferior officers, right? So it's putting the two together? Well, I don't even think that that matters. Again, the merits of the constitutional challenge are irrelevant to whether or not the district court has jurisdiction. I mean, in the Eleventh Circuit case, for example, in Hill and Gray, it was consolidated cases. The district court there found that it had jurisdiction and then ruled for the plaintiffs there on the merits of the underlying challenge. The Eleventh Circuit said, we're ignoring the merits of this. You may well be right. But to succeed on the merits in a court, what you have to do is go through the statutory scheme that Congress has provided, which is to complete the administrative proceedings, and then if you are aggrieved by an order of the commission, seek judicial review of that in the Court of Appeals. That's just not what the statute says, right? I mean, you're missing 1818I1, right? So Bank of Louisiana specifically, the statute says, no court shall have jurisdiction to effect by injunction or otherwise the issuance or enforcement of any notice or order under Section 1818 or to review, modify, suspend, terminate, or set aside any such notice or order. Very broad, sweeping, anti-injunction provision that says, we, federal courts do not have jurisdiction to interfere in the things that the FDIC are doing in that case. And 78Y says nothing of the sort. There's nothing else in the SEC Act that seems to say anything of the sort. It just says, at the end, if you are aggrieved, you may. I mean, it is permissive. So there's no channeling. There's no stripping. There's none of the stuff that we normally see from the government in these administrative review proceedings. You know, this court sees Social Security Administration that makes these arguments. FDC makes these arguments. The CFTC makes these arguments. But this statute doesn't look anything like those other ones. Well, to be clear, the 1818I is in FDIC. It's not in the SEC statute. It also isn't in the statutes at issue in Thunder Basin. And similar language was not at issue like that for the MSPB statutory scheme review in Elgin. But in those cases, the Supreme Court held that, implicitly, what the statute is doing is saying, Congress is creating a scheme here where it wants all of these sorts of claims to be first adjudicated within the agency and then to still receive judicial review, but judicial review through a particular mechanism, review in the Court of Appeals. So what differentiates those cases from Free Enterprise then? So what happened is that Elgin came after Free Enterprise. What Free Enterprise said on the third Thunder Basin factor was, we don't think that agencies can necessarily adjudicate constitutional claims. They can't bring their expertise to bear. Two years later, the Supreme Court decides Elgin. And what Elgin says is, that's not the relevant inquiry. It's not whether the agency can determine the merits of the constitutional question. We will assume that the agency cannot. But what the agency can do is it can bring its expertise to bear on basic threshold questions, namely, are you liable for the statutory violation for which you are charged? And if the agency determines that you're not, that moots the constitutional question. But why is that? I see this as different from those other cases because there are extrinsic complaints about what is going on administratively and there are intrinsically ones. And Bank of Louisiana, it seemed to me, and Thunder Basin both involved intrinsic complaints. In other words, you can argue all day about the due process in terms of the discovery or the way in which the particular statute is, the underlying statute is being applied to the regulated entity. But this is different. This says the tribunal can't exist. This says it cannot exist. And to me, that's what Free Enterprise is talking about. Well, two points, Your Honor. I think one is that I think under plaintiff's theory here, the ALJ can exist and adjudicate the case, but it cannot do so with the removal restrictions that are in place, right? So presumably, if there was a remedy to potentially sever those, if there was ever a jurisdictionally proper case where a court could consider its own merits. If there's a procedure whereby ALJs are appointed right now, how do you, quote, sever all that? Well, I believe it would be sort of the same as happened in Free Enterprise, is that the But just to go to the point, what they're alleging is an irregularity in the proceeding, right? The commission doesn't have to assign this. I don't think it's irregular to be tried before. In other words, suppose I'm in Houston, Texas, and we change judges as of January 1st of this year, and the judge who was there is now trying to preside over my case, but that person has been ousted from office. That person is not validly holding office. Don't I have a right to mandamus or object? I mean, that's what the writ of quo warranto was about, I believe. So I think that's pretty analogous to the situation that happened in Lucia versus SEC, where what happened was that plaintiff or petitioner there raised his appointments clause challenge in the administrative proceedings and pursued that through 78Y to the courts of appeals and the Supreme Court. And the Supreme Court granted meaningful judicial relief. It said the decision against you is vacated. This has to be redone in a constitutionally appropriate standard. That's a statutory scheme that Congress devised. But this woman has already been through that process once, and now she's saying that this person is not constitutionally holding office. Sure. So she can raise that claim in the administrative proceedings. That's exactly what happened. Or a very similar claim happened in Bank of Louisiana. At page 930 of the decision, the court said, to be sure, the bank's separation of powers challenge to the ALJ. Whatever that separation of powers challenge was is not at all articulated except in one sentence of that opinion, if I'm not mistaken, right? It's not discussed at length in the opinion, but if you look at the second enforcement proceeding that the opinion is describing, that's NRA Bank of Louisiana. It's at page 13 of the agency's opinion there. It says what the challenges are to the ALJ's authority, and there are two. It's an appointments clause challenge, the same one that happened in Lucia, and it's an argument that the tenure protections of the ALJ violate separation of powers principles. That's at page 13 of the NRA Bank of Louisiana. But how much of that was actually argued to the Fifth Circuit if it garners one sentence? Your Honor, I'm not sure. They did talk about the discovery issues at some — I'm just wondering the extent to which we have to go back behind printed decisions into what went on before in order to arguably expand the scope of the decision. Your Honor, I don't think the kind of constitutional claim that a person raises necessarily dictates whether a district court has jurisdiction. That's what the Supreme Court held in Elgin. So Elgin was a case where people had been fired from their federal employment service because they failed to register for the draft. They then sued in district court saying the draft violates equal protection principles because it only requires men to register and not women. And what the Supreme Court said is that is a claim that you have to bring through the administrative review process. And the dissent in that case said, well, this is somewhat different because it's a facial constitutional challenge, and that should make a difference as to district court jurisdiction. The majority rejected that. Is your view that Elgin overrules in some way free enterprise? I think it clarifies how free enterprise applies to constitutional claims. What mattered in free enterprise was that the plaintiff there, right, was not subject to an enforcement proceeding. And this Court made that clear in Bank of Louisiana. What was different there was that they were challenging the existence of the agency as a whole. They would be generally regulated, and there was no way for them to do that other than a district court proceeding. They were not subject to any pending orders that could eventually receive judicial review. Well, they were subject to pending enforcement orders throughout the litigation. They just weren't by the time of the actual decision. But what I'm trying to understand is that 78Y is the statute that the Supreme Court of the United States interprets in free enterprise, and it rejects the exact jurisdictional argument that the government is making before us today. And so what I'm trying to figure out is why is it that the United States is continuing to talk about every other statute in the Code except for 78Y? So we're talking about the draft. We're talking about the Bank of Louisiana case. We're talking about all these other things except for 78Y, which the Supreme Court has said does not preclude jurisdiction of the federal district courts to hear the claims that Ms. Cochran is bringing in this case. Well, no. To be clear, Your Honor, in free enterprise fund they were not subject to an enforcement proceeding. And the Supreme Court was at pains to say we are not going to make you voluntarily incur a sanction to violate a statute or regulation at random in order to get yourself into an adjudicative enforcement proceeding before the agency. Suppose the SEC offers to Ms. Cochran a settlement tomorrow, and say it's a really good settlement. You know, let's settle for a dollar. How is she not in exactly the same situation as the petitioners in free enterprise? Because now she has to take a choice. Should I take the really good settlement? Sounds like a great thing and make my problems go away. Or risk the sanction, as the Chief Justice puts it, in free enterprise in order to preserve the constitutional challenge to the Appointments Clause problem? Well, because it's what this Court said in Bank of Louisiana, is that we have nothing like that here. The bank was already embroiled in an enforcement proceeding, and it need not take any additional risk to assert its constitutional claims. I'm sorry. Under my hypothetical, she has to bet the farm, right? She has to turn down the sweetheart $1 deal in order to preserve her challenge. It's exactly the same, unless you can identify for me a distinction. I think the relevant distinction is that in free enterprise fund, right, they were Here, her challenge is not to the SEC to say that we don't want you to practice before the Commission. Her challenge is that the SEC has taken this administrative enforcement proceeding against me and assigned it to an ALJ. I have a constitutional claim against that ALJ. But why does she have a different one, I mean, but it is exactly the same challenge, which is that I am not to be regulated, albeit by an ALJ, by an unconstitutionally determined employee, officer. No, to be clear, it's not whether or not she's regulated by the ALJ, right? So you're saying free enterprise would have been entirely different if they had, you know, somebody had said you're not doing your audits right. It would have come out the opposite. Yes, if there was opinion. What's the best language in free enterprise that draws that distinction? The best language in free enterprise, if you can give me a moment because I need to turn to that in here. Petitioners object to the Board's existence, not to any of its auditing standards. And so they need not, I forget exactly where this is, but what they say is they need not incur a sanction to test the validity of the law. Here's the quote. We normally do not require plaintiffs to, quote, bet the farm by taking the violative action before testing the validity of the law. Well, I mean, you just said Ms. Cochran objects to the ALJ, not to the particular sanctions that are being brought against her. And what was the second thing he said that was clearly favorable to Ms. Cochran? So you get down, the first two quotes that you attempted to use were more favorable to Ms. Cochran than to your position. I don't believe so, Your Honor. If I can explain why, because I think this is critical. In free enterprise, they were not subject to an enforcement proceeding. What this court said in Bank of Louisiana is that that makes all the difference. Once this court said the farm is already on the table, once you are already in an enforcement proceeding, that's what 78Y is about, right? The enforcement proceeding is going to culminate in a final order of the commission. Now, note that that final order of the commission may be favorable to Mrs. Cochran. It may say you have not violated any of the statutes or regulations. You may have done all of your audits fine. In which case, there is no need for judicial review of her constitution. In which case, the case is moot and she's been subjected to years and many dollars worth of agony for nothing, right? Which is exactly what the Supreme Court in Elgin said is the point. If the agency can moot the constitutional claims by saying that you are not actually liable for any statutory or regulatory violations, that is all to the good. Are you sure that Elgin is intended to have wide applicability besides this particular peculiar challenge to the draft registration law? Yes, I do, Your Honor, because it's talking about how Thunder Basin generally applies to constitutional claims. That's why the court was at— This generally applies to Thunder Basin also. I'm sorry. Which is? Free Enterprise. It does, Your Honor. And then what Elgin did was to clarify how Free Enterprise Fund should apply when there is a pending enforcement proceeding. And then the bank, you know, the Fifth Circuit in the bank case said, really said, we don't even need to go any farther because we're not allowed to give a, let's see, so robust is the section 1818I1 bar that FDIC invites us to stop there and decline to analyze the Thunder Basin factors. And on the next page in footnote 10, what the court says at the end of that footnote is, in any event, we need not resolve that issue because of our holding that the statutory scheme withdraws district court jurisdiction implicitly. That's saying that we need to go forward and apply all of the Thunder Basin factors to determine whether or not the statute at issue 78Y of the Exchange Act implicitly divests district court of jurisdiction. That's why— There is intuitive difficulty to think that the agency's expertise would pertain to this constitutional standard. And that's why the Supreme Court explained in Elgin, right, the agency expertise, that doesn't necessarily go to can the agency decide the merits. In Elgin, what the Supreme Court said is, we'll assume that the MSPB cannot do that, but the MSPB can decide threshold issues. For instance, have you been appropriately removed from your position or constructively discharged? And if the agency says, no, you should be reinstated to your position for a variety of other reasons that avoids the constitutional— I know at the beginning you said put the merits aside. But there is, to me, but correct me if I'm wrong, there's a little bit of irony for the U.S., the United States government to be before us in this case saying, wait, wait, wait, what might take years? But the position Ms. Cochran is arguing is very like the one that the U.S. government took in Lucia, urged the court to take. It's a removal clause problem. It's the position the U.S. government took in our Collin Zambon, which you may be familiar with. And it's even the position the government has switched and taken in the pending cert cilia law. So you're essentially, I think if I read it, the government is saying, she may well be right about the removal clause, but just Ms. Cochran, you wait a couple of years and then we'll maybe agree at that point. If I can make two points, Your Honor. One is that in the merits brief in Lucia, the solicitor general's brief made very clear that there are constitutional questions about removal, but that there is a way to construe the statute. Now, noticeably, the merits of that question have not been briefed in this motion or in this case, because this is a jurisdictional case. But two, the policy choice of how to review constitutional claims that arise from administrative proceedings is one that Congress is entitled to make. And that's — Your Honor, as pointed out, that's not a very strong statement by Congress in this statute, right? Are you familiar with the Supreme Court decision a year or two ago, Kent recycling? I'm not, Your Honor. Well, it was a decision that was unanimous and reversed a panel decision that I wrote, which, in the Army Corps context, told the landowner, you just have to wait until the Army Corps determines if it's wetlands or not. And it seemed to me that that was right. Exhaust your administrative process. The Supreme Court, quite strongly in the context at least of a constitutional taking, said, you get into court immediately. So I was intrigued that Free Enterprise is essentially saying, let him in. And the answer seems to be, but for timing. Oh, she's already embroiled in the proceeding. Can't. Had she not quite gotten in the proceeding, yes, she can. No, Your Honor. That's also the Hill decision out of the Eleventh Circuit. The Hill decision says, we don't want to make this into a rush to the courthouse. There, the plaintiff knew that an SEC administrative proceeding was imminent and tried to rush to the courthouse to get their head. And the Eleventh Circuit said, no, that still implicates all of the same Thunder Basin factors. So she still loses. Head she loses, tails you win. No, Your Honor. Again, this isn't about the merits. The only question here — No, no. I'm sorry. Your Honor, on the jurisdictional question, it sounds like it doesn't — it's not a matter of timing to Judge Higginson's question. She's going to lose whether she's embroiled in the investigation or not. Because of the particular constitutional claims that she raised, and because they're claims against an ALJ, the only way that you can raise those claims is because you're subject to a proceeding that has been assigned to an ALJ. You don't have a — Let me ask a question. Because if I recall it correctly, I thought Justice Breyer in one of these cases said, well, if this double layer of removal is a problem, what's going to happen to the ALJs? He asked it rhetorically, of course, in dissent, and the Supreme Court then replied in a footnote, we're not going to touch that. Why wouldn't the SEC simply file its proceedings in federal district court rather than having to use ALJs? Yes, Your Honor, because one of the reliefs that the commission — or that the Order of Restituting Proceedings seeks here is because the allegations are that Ms. Cochran didn't properly conduct audits, is to prevent her — to deny her the privilege of practicing before the commission, to work as an accountant, signing papers that will be — go before the commission. That is relief under 15 U.S.C. 78d-3, that the commission can only get in an adjudicative hearing before the commission. It can't go to district court for that kind of relief. And so that's why — You mean that's the only — but there are penalties sought here also? Yes, and Congress gave the SEC a choice of whether to proceed in district court — But still, I'm asking you, suppose she were — okay, so let's refine this. Suppose she were subjected to the penalty provision in the district court and she loses. Then she has to pay 20-some thousand dollars, and then the SEC says, okay, you've been I'm not certain exactly whether that would work. I assume that there would still need to be hearings. I don't see why not, because that would be an adjudication of her guilt vis-a-vis the regulations. My guess is that — That would be for cause. My guess is that if that was assigned to an ALJ, she would still have the same argument and try to get to district court. And as an additional point, just before my time is finished here, this court held in challenges to ALJs are not right for adjudication before there is a final order adverse to the plaintiff. Ben? Just two questions. Do you have an answer to the onslaught — her claim that there wouldn't be an onslaught problem? And then the second one is the first set of questions I asked opposing counsel, which is, you didn't brief Ruiz at all, and yet that is how they came at it, that these were — we should assess these under the Ruiz factors, not the what I call Nikin factors. Two totally different questions. Do you have — you're very quick and prepared. Do you have answers to both? I'm trying to remember what the backlog or backslug point was. The onslaught, that if we were to stay here, it wouldn't create a huge problem, impasse for the SEC. I'm hard to accept that, Your Honor, because anyone can challenge or dress up a challenge as a constitutional challenge, whether on separation of powers, grounds, or due process or protection. And I think on very similar methods, alleged that there is district court jurisdiction. Okay. That's this question, substantial case that we cited is Vidal v. Gonzalez, which I believe is still good law, especially after the Supreme Court's decision in winter versus National Resources Defense Council, which says you have to satisfy all of the four factors. And I just point out, every court of appeals have considered this and similar challenges as held that there is no district court jurisdiction, and this Court agreed with the reasoning of those circuits in Bank of Louisiana. Thank you, Your Honors. Thank you. Ms. Cochran. I'd like to respond to the SEC's point made about the course of events that took place in Lucia constituting meaningful judicial review. Little, excuse me. That's fine. I think that for the SEC to take the position that you have to bring a claim before an ALJ, then to the commission, then to the circuit court, and that once you prevail on that claim, which you have preserved at the U.S. Supreme Court, that's somehow meaningful judicial review. Plus, the prize you win when you win that case at the U.S. Supreme Court is that you get to go back and do it all over again, precisely what has happened to Mr. Lucia. And this goes to the unnecessary and vacated proceedings point, which should be of great concern to this Court. Why wouldn't a court assert jurisdiction to decide this question first so that people do not have to go through these to-be-vacated proceedings? I would suggest that when a system of justice operates in this fashion, you can make a serious case that some first principles have been set aside. But you're not disagreeing Congress could write it the way that Judge Oldham was reading, in a way that made it absolutely clear you had to wait. Congress has that power. It has not exerted that power in this case. It's a question of statutory construction, and not so much it couldn't be written that they'd have to wait and come to us first. And the great part about if Congress were to do that is that the citizens of this country could speak to Congress and vote them out of office if they decided to put them through a regime that operated in that fashion. I don't think a serious case can be made by anyone that Congress intended either the SEC Commission or its ALJs to decide separation of powers constitutional questions. That is the province of the Article III courts. And your recent decision in Collins talks about the fact that administrative agencies are confined at the four corners of what Congress has delegated to them. And certainly it has not delegated decisions on constitutional questions. That gets back to my question. What's your best authority, and I'm happy for scholarship too, that allows us to classify as opposing counsel finished. He said, well, you can dress up a constitutional violation, so let's assume it's just that the proceedings violate a due process. Those are in or out. Do you get to jump over into district court? How do we distinguish and subdivide categories of constitutional arguments? We suggest in our briefing that if the court were to apply the injunction standard to reviewing these constitutional claims and hold the plaintiffs to you've got to have a likelihood of success on the merits or perhaps a serious question here. And there is a law review article on this. It's called Eventual Judicial Review. It's written by Adam Katz. And in that, and it's cited in our papers, and in that article, he suggests that if courts are to hold the plaintiffs to that injunctive standard, you could sort out the sort of procedural due process or perhaps Fifth Amendment claims that come up. Why do you have to go beyond separation of powers? You don't. And certainly in this case, you don't at all. And I do think we are wandering afield. That's what free enterprise was. Yes. Going to the bet the farm inquiry that was discussed in opposing counsel's argument, the dissent in Tilton made the point that Judge Oldham made about settlement and how the settlements work very much to put people in the position where they have to bet the farm. Also, if you have this kind of power, the agency has an incentive to go before the ALJJ precisely to avoid adjudication of constitutional issues. So I don't think the bet the farm logic works here. The point that was made earlier by Judge Jones about the ability of the SEC to get the remedy of stopping anyone in Ms. Cochran's position to be practicing before the ALJs, those are what are known as follow-on proceedings in the courts where the SEC can get the same remedy after the person has been tried before a constitutional court. Is the reason that these people are protected by the MSPB just the historical one? Well, it's the way the statutes are set up. We haven't briefed severance here, and I think it might be going a bit far afield, but I will say this, that severance is not an easy remedy in this case because of the I have the pronunciation here, matryoshka doll nesting of protections. And so, you know, severing 7521 doesn't solve the problem. There are two more layers of protections. So is it that the SEC commissioners are to be fireable at will? Is that what Congress wanted? Or should the MSPB tenure protections be set aside? That involves a whole other set of problems across a broad range of administrative agencies. So the severance issue is not an easy solution here. And my position to you today is it's also completely unnecessary. All the SEC has to do is try Ms. Cochran before the commission or, in other cases, bring a case in the federal courts. The statute is set up to provide it with remedies. Okay. We have your case. Thank you. Thank you very much.